UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BEVERLY DIANE ANTWI,

Plaintiff,

– against –

MONTEFIORE MEDICAL CENTER,

Defendant.

**OPINION AND ORDER**
14 Civ. 840 (ER)

Ramos, D.J.:

This action is one of two, related to substantially similar parties and events, brought in this Court by *pro se* litigant Beverly Diane Antwi ("Plaintiff"). In an ongoing, earlier-filed action, Plaintiff alleges that Health & Human Services Systems (Centers) F.E.G.S. ("FEGS"), a non-profit health center where she resides and receives care, denied her benefits from government programs, misappropriated federal funds intended for her use, and made reports that resulted in her unlawful hospitalization at Montefiore Medical Center in violation of her human rights and civil liberties. *See Antwi v. Health & Human Servs. Sys. (Centers) F.E.G.S.*, No. 13 Civ. 835 (ER), 2014 WL 4548619, at *1 (S.D.N.Y. Sep. 15, 2014) (denying Plaintiff's motion for summary judgment).

In the instant case, Plaintiff alleges that psychiatrists employed by Montefiore Medical Center ("Defendant" or "Montefiore") involuntarily hospitalized her, placed her in a mandatory outpatient treatment program due to a "mix-up of records," and forcibly medicated her. *See* Compl., Doc. 2 at 3-5.[1] Liberally construed, the Complaint asserts claims against Montefiore for

---

[1] Plaintiff has attached numerous documents to her Complaint and Opposition, including copies of Defendant's pleadings in this action. Because these exhibits are provided without a clear ordering or labeling convention, the Court's citations herein refer to ECF documents and page numbers.

defamation, gross negligence, intentional infliction of emotional distress, and civil rights violations pursuant to 42 U.S.C. § 1983.  *Id.*  Defendant now moves to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Def.'s Mot., Doc. 17.  For the reasons discussed below, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED.  However, Defendant's motion to dismiss for failure to state a claim is hereby GRANTED.

## I.  Background

### A. Factual Background

The following facts, accepted as true for purposes of the instant motion, are based on the allegations in the Complaint, Plaintiff's Opposition to Defendant's motion to dismiss, exhibits attached to her Complaint and Opposition,[2] and affidavits submitted by the parties.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141 (2d Cir. 2012) (evaluating a Rule 12(b)(6) motion); *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (evaluating a Rule 12(b)(1) motion).[3]

Plaintiff is a 40-year-old woman with a history of psychiatric disorders and hospitalizations.  Doc. 2-1 at 1.  Defendant is a private, not-for-profit hospital corporation

---

[2] Plaintiff's many exhibits appear to include doctors' notes, "progress notes" written by FEGS social workers and case managers, Social Security Income payment stubs, and copies of Defendant's pleadings in this proceeding. Many of the exhibits contain Plaintiff's handwritten remarks in the margins and on top of statements by the documents' original authors and preparers.  Certain of these annotations are indecipherable.

[3] As a matter of course, courts may consider documents outside the pleadings when ruling on a 12(b)(1) motion.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).  When ruling on a 12(b)(6) motion, the Court generally must confine itself to the four corners of the complaint and look only to the allegations therein.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  However, a court may also consider allegations in documents or statements that are either attached to the complaint, incorporated by reference or integral to the complaint, provided that there is no dispute regarding their authenticity, accuracy or relevance.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).  The Court finds that certain of Plaintiff's many exhibits may properly be considered in connection with the instant motion to dismiss, to the extent that their accuracy is not called into question by Plaintiff's annotations.

organized and established under the laws of the State of New York.  Pl.'s Opp'n, Doc. 21 at 30.

On multiple occasions, Plaintiff has been hospitalized and treated in the psychiatric unit at

Defendant's Montefiore North Medical Center ("Montefiore North"), which provides inpatient

and outpatient services.  *Id.*

On July 11, 2012, Plaintiff was involuntarily admitted to the psychiatric unit at

Montefiore North pursuant to § 9.39 of the New York Mental Health Law (MHL), which permits

short-term confinement on an emergency basis.[4]  Doc. 21 at 12, 25.   She was "continued on

involuntary status" at Montefiore on July 17, 2012, pursuant to MHL § 9.27.[5]  *Id.* at 25.  Prior to

her July 11 admission, Plaintiff had been hospitalized at Montefiore North on several other

occasions:  January 1 to January 6, 2011; January 25 to February 21, 2012; and March 16 to

March 22, 2012.  Doc. 21 at 36.  According to Dr. Willy Alexis, whose affirmation Plaintiff

includes among her exhibits, "Upon discharge from each of the above hospitalizations, [Plaintiff]

---

[4] Section 9.39 permits emergency psychiatric hospitalization where there is "reasonable cause" to believe someone has "a mental illness for which immediate observation, care and treatment in a hospital is appropriate and which is likely to result in serious harm" to him/herself or others.  N.Y. MENT. HYG. (MHL) § 9.39 (McKinney 2013); *see also Project Release v. Prevost*, 722 F.2d 960, 963-64 (citing MHL § 9.39).  Hospitalization under § 9.39 may be initiated by, among others, police officers and psychiatrists supervising or providing treatment in facilities licensed or operated by the Office of Mental Health (OMH).  *See* N.Y. OFFICE OF MENTAL HEALTH, MENTAL HYGIENE LAW – ADMISSIONS PROCESS, https://www.omh.ny.gov/omhweb/forensic/manual/html/mhl_admissions.htm (last visited Nov. 17, 2014).  A patient may be held pursuant to MHL § 9.39 for no more than 15 days, after which time the hospitalization may be continued pursuant to MHL § 9.27 if the patient meets the standard for that section.  *Id.*

[5] Section 9.27 permits involuntary hospitalizations of up to 60 days, based on the approval and signatures of two physicians, where a "person has a mental illness for which care and treatment in a mental hospital is essential to his/her welfare," the "person's judgment is too impaired for him/her to understand the need for such care and treatment," and "as a result of his/her mental illness, this person poses a substantial threat of harm to self or others." *Id.*; *see also Project Release*, 722 F.2d at 965-66 (citing MHL § 9.27).  The involuntary hospitalization may continue beyond 60 days, pursuant to MHL § 9.33, if the hospital applies for a court order of retention and the court finds that the patient still meets the standard for involuntary hospitalization.  *See* N.Y. OFFICE OF MENTAL HEALTH, https://www.omh.ny.gov/omhweb/forensic/manual/html/mhl_admissions.htm.  Neither party presents facts regarding whether such an order was sought or obtained.

was to receive outpatient services from the Montefiore North Clinic, but did not comply, stopped taking her medications, and decompensated as a result of non-compliance with treatment." *Id.*[6]

Plaintiff was hospitalized for several months following her July 11 admission. During that time, Dr. Alexis, "after consultation with [Plaintiff] and other members of her treatment team," devised a treatment plan providing for care coordination among an Assertive Community Treatment (ACT) Team, supportive housing at FEGS, and a course of many medications. *Id.* at 37. Dr. Alexis stated that Plaintiff was "in need of Assisted Outpatient Treatment ["AOT"] in order to prevent a relapse or deterioration which would likely result in serious harm to [her] or others . . . ," and that Plaintiff, to his belief, could not "be safely maintained in any less restrictive placement . . . ." *Id.*

On October 11, 2012, Defendant submitted an application to the New York State Supreme Court, Bronx County, seeking an AOT program pursuant to MHL § 9.60.[7] Doc. 21 at 26. Also known as "Kendra's Law," § 9.60 authorizes courts to order that patients "self-administer psychotropic drugs or accept the administration of such drugs by authorized personnel" and participate in outpatient programs including "case management or case

---

[6] Plaintiff alleges that certain of these hospitalizations were unlawful and that others did not actually occur or involved other patients wrongly admitted for hospitalization under her name. *See, e.g.*, Doc. 2 at 4 (noting that all hospitalizations in Defendant's "lockdown psychiatric ward" were based on Defendant's belief that she was "being delusional about missing funds," despite that she "produced receipts and showed them to the doctors and refused voluntary admission"); Doc. 21 at 51 ("All Hospitalizations were Unwarranted FEGS Applied Under false Pretenses . . . ."); *id.* at 52 ("All hospitalizations except 2007 Grandiose, Delusional About people stealing SSI benefits. I showed Alexis Receipts He knew I wasn't Delusional."); Doc. 2 at 22 ("THEY Mixed up my Records, by Hospitalizing 2 other women under My Name and chart number As me."); Doc. 21 at 25 (circling a reference to a hospitalization from "March 16, 2012 until March 22, 2012" on a copy of Defense Counsel's Declaration, attached as an exhibit to Plaintiff's Opposition, and adding the annotation "NOT ME"); *id.* at 60 ("The person who called in A confession of murder was Released from the hospital on the 22nd, but my social worker places me in her office on the 20th.").

[7] Section 9.60 outlines the criteria under which a court may order an adult suffering from mental illness to receive AOT. MHL § 9.60. Petitions for an order authorizing AOT may be filed in the supreme or county court by, among others, the director of a hospital in which the subject of the petition is hospitalized; the director of any public or charitable organization, agency or home providing mental health services to the subject of the petition or in whose institution the subject of the petition resides; or a qualified psychiatrist, psychologist, or social worker who is either supervising the treatment of or treating the subject of the petition for a mental illness. *Id.*

coordination services, medication, substance abuse counseling and testing, and therapy."

*Coleman v. State Supreme Ct.*, 697 F. Supp. 2d 493, 498-99 (S.D.N.Y. 2010) (quoting MHL

§ 9.60).  Defendant supported its application for an AOT program with Dr. Alexis' affirmation

and testimony, describing Plaintiff's history of noncompliance with treatment and episodes in

which Plaintiff had become "psychotic, paranoid, agitated, delusional, threatening, loud,

belligerent, and hypereligious."  Doc. 21 at 36; Doc. 23-1 at 1.[8]  A hearing was held before the

Honorable Sharon Ann Aarons in the Mental Hygiene Part of the Supreme Court of the State of

New York, Bronx County, on October 17, 2012, at which Plaintiff was represented by counsel.

Doc. 21 at 41-42.   Judge Aarons found, by clear and convincing evidence, that Plaintiff met the

MHL criteria for AOT, and that AOT was the "least restrictive treatment that [was] appropriate

and feasible."  *Id.*  She issued a court order for the treatment plan devised by Dr. Alexis.  *Id.*

    Although Judge Aarons' order states that she approved Defendant's treatment plan

pursuant to MHL § 9.60 based on the evaluations and diagnoses of Dr. Alexis and the staff at

Montefiore North, Doc. 21 at 41-44, Plaintiff alleges that her hospitalization and AOT both

resulted from Defendant's faulty record-keeping.  *See, e.g.*, Doc. 21 at 3 ("Kendra's law criteria

wouldn't have been satisfied if my real records were used at the time of trial.") (emphasis in

original); Doc. 2 at 3 (claiming that her hospitalization resulted from a "mix-up of records" and

"faulty paperwork" claiming that she was "somebody dangerous" or "criminally minded"); *id.* at

22 (claiming that Montefiore "mixed up" her records "by Hospitalizing 2 other women under

[her] name and chart number As [her]"); Doc. 21 at 2-3 (claiming that on January 6, 2011,

---

[8] Section 9.60 requires petitions seeking AOT to be supported by the affirmation or affidavit of a physician who has examined the patient or certifies that he/she was unable to persuade the patient to permit an examination.  MHL § 9.60.  In order for the court to direct AOT, a physician who has personally examined the patient must testify and provide detail to establish that an AOT program would be the "least restrictive alternative" for the patient's care. *See Coleman*, 697 F. Supp. 2d at 510-11.

"Montefiore admitted 3 people under [her] name and information, all at the same time on the same day"). She explains that Defendant's "years of ruined records" amount to "defamation, gross negligence, and psychological abuse." *Id.* She further states that her hospitalization and court-ordered treatment plan, which includes biweekly injections of what she describes as "horse pill amounts" of anti-psychotic medications,[9] constitute civil rights violations and wrongful punishments. *Id.*; Doc. 2 at 3. Additionally, Plaintiff asserts that she should not have been subjected to treatment supervised by an ACT Team because she was hospitalized for four months prior to her hearing. *Id.* at 3.

### B. Procedural History

Plaintiff commenced this action on February 6, 2014. Doc. 2. Originally assigned to the Honorable Richard J. Sullivan, the case was transferred to the undersigned on May 21, 2014 based on its relatedness to Plaintiff's earlier-filed suit, *Antwi v. FEGS Health and Human Services System*. Doc. 11; *see also* Doc. 21 at 3 ("I sued FEGS my residence for the <u>application</u> of admission and seek to sue Montiefore [sic] for the actual admission (which because it is a form of incarceration) is a civil rights violation.") (emphasis and parentheses in original).

Although the Complaint does not identify specific causes of action, Doc. 2, the Court construes her allegations as asserting substantive and procedural due process claims under 42 U.S.C. § 1983 and state law claims for gross negligence, defamation, and intentional infliction of emotional distress. *See, e.g.*, Doc. 21 at 2-3 (discussing defamation, gross negligence, "psychological abuse," "civil rights violations," and her "inability to refuse treatment"). She seeks more than $50 million in damages: $250,000 for each intra-muscular anti-psychotic injection, $15 million for her involuntary hospitalization from July to October 2012, and $5

---

[9] It is unclear whether this course of treatment is ongoing. Plaintiff asserts that, as of the filing of her Opposition, she was still receiving bi-weekly injections. Doc. 21 at 21.

6

million for each hospitalization from 2010 to 2012.  Doc. 2 at 5.  Plaintiff asserts federal question

jurisdiction under 28 U.S.C. § 1331 and asks the Court to exercise jurisdiction over the pendent

state law claims pursuant to 28 U.S.C. § 1367.

Defendant now moves to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure, arguing that this Court lacks subject matter jurisdiction

and that the Complaint fails to state a claim upon which relief can be granted.  Doc. 17.

## II.  Relevant Legal Standards

### A.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of

subject matter jurisdiction when the district court lacks the statutory or constitutional power to

adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction

carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the

district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits,

may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle*

*E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*,

547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for

lack of subject matter jurisdiction, the court accepts all material factual allegations in the

complaint as true but does not necessarily draw inferences from the complaint favorable to the

plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping*

*Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must

consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820

F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v.*

*Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012), because "disposition of a

Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction."

*Chambers v. Wright,* No. 05 Civ. 9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19,

2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998)).

**B.   Rule 12(b)(6)**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required

to accept as true all factual allegations in the complaint and to draw all reasonable inferences in

the plaintiff's favor.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this

requirement does not apply to legal conclusions, bare assertions or conclusory allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil

Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is

plausible on its face.  *Id.* (citing *Twombly*, 550 U.S. at 570).  Pleadings that tender "naked

assertions devoid of further factual enhancement," *Id.* (quoting *Twombly*, 550 U.S. at 557)

(internal quotation marks omitted), or "an unadorned, the-defendant-unlawfully-harmed-me

accusation" will not suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555).

In addition to requiring sufficient factual matter to state a plausible claim to relief, Rule 8

requires a "short and plain statement" of a plaintiff's claim in order to "give the adverse party

fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin*

*v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988).  It is within the court's discretion to dismiss a

complaint "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Shomo v. New York*, 374 Fed. App'x 180, 182 (2d Cir. 2010) (quoting *Salahuddin*, 861 F.2d at 42).

### C. *Pro Se* Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers," *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)), and liberally construes their pleadings "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citations omitted). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nonetheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *see also Zapolski v. Federal Republic of Germany*, 425 Fed. App'x 5, 6 (2d Cir. 2011) (*pro se* plaintiffs must plead sufficient facts to establish a plausible claim to relief and establish subject matter jurisdiction).

## III. Discussion

### A. Section 1983

To state a claim under § 1983, a plaintiff must allege that: (1) a right secured to them by the Constitution or federal law was violated; and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). Section 1983 does not create any rights, but merely provides "a procedure for redress for

the deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).  It is well-established that involuntary confinement and forced medication constitute significant deprivations of liberty requiring due process protection.  *See Addington v. Texas*, 441 U.S. 418, 425 (1979) (citing numerous cases in which the United States Supreme Court affirmed this principle with regard to involuntary commitment); *see also Washington v. Harper*, 494 U.S. 210, 229 (1990) ("The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty.").  The pivotal issue in this case is whether Defendants were state actors when they hospitalized and medicated Plaintiff against her will.  *See Doe v. Harrison*, 254 F. Supp. 2d 338, 342 (S.D.N.Y. 2003).

"[P]rivate conduct, no matter how discriminatory or wrongful," is not controlled by § 1983, *Am. Mfrs.*, 526 U.S. at 50, except in the limited situations where a "private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French,* 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982)).  "The conduct of private actors can be attributed to the State" for § 1983 purposes if:  "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Memorial Hosp.,* 346 Fed. App'x. 627, 629 (2d Cir. 2009).

Plaintiff offers no facts or arguments to establish that Defendant, a private hospital, meets the state action requirement of § 1983.[10]  Regardless, had she provided any such arguments, they would have proven unavailing, for it is well-settled in the Second Circuit that a private hospital

---

[10] The closest Plaintiff comes to an argument on this integral component of a § 1983 claim is an annotation in the margins of a copy of Defendant's motion to dismiss that she has attached to her opposition to that motion.  She writes, "Dr. Alexis was An Actor of the defense with [Defense Counsel] Acting in A State Supreme Trial as Dr. Alexis + Montefiore's Representative." Doc. 21 at 20.  Even assuming that Plaintiff is asserting that Dr. Alexis is a state actor, the assertion is conclusory.

confining a patient under the New York MHL is not acting under color of state law.  *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (reaffirming the principle that "forcible medication and hospitalization . . . by private health care providers" cannot be attributed to the state); *Hogan*, 346 Fed. App'x at 629 (affirming district court's grant of summary judgment to private hospital and physician that involuntarily committed patient, finding that conduct could not be attributed to the state); *Doe v. Rosenberg*, 166 F.3d 507 (2d Cir. 1999) (holding that private health care professionals and a private hospital had not functioned as state actors when they involuntarily committed a patient to their psychiatric ward).

In numerous § 1983 cases involving private hospitals and health care professionals, Southern District courts have found that none of the three tests for state action—"state compulsion," "public function," and "close nexus"—are satisfied.  *See, e.g.*, *McGugan v. Aldana-Bernier*, No. 11 Civ. 342 (TLM), 2012 WL 1514777, at *4 (E.D.N.Y. Apr. 30, 2012) *aff'd* 752 F.3d 224 (2d Cir. 2014); *Amofa v. Bronx-Lebanon Hosp. Center*, No. 05 Civ. 9230 (SHS), 2006 WL 3316278, at *4 (S.D.N.Y. Nov. 13, 2006); *Turturro v. Continental Airlines*, 334 F. Supp. 2d 383, 395-97 (S.D.N.Y. 2004); *Doe v. Harrison*, 254 F. Supp. 2d 338, 342-45 (S.D.N.Y. 2003); *Doe v. Rosenberg*, 996 F. Supp. 343, 353 (S.D.N.Y. 1998), *aff'd* 166 F.3d 507; *Alcena v. Raine*, 692 F. Supp. 261, 266-67 (S.D.N.Y. 1988).  Nor are they satisfied in the case of Plaintiff.  The MHL provisions supporting her hospitalization and treatment do not "compel" or encourage action by private hospitals and health care professionals; the statute merely permits such action under certain circumstances.  *See Doe*, 996 F. Supp. at 349; *McGugan*, 2012 WL 1514777, at *4-5.  Civil commitment pursuant to the MHL does not constitute the exercise of a power "traditionally the exclusive prerogative of the State."  *Id.*  Rather, involuntary confinement has been a traditionally "private remedy" in New York.  *Id.* at *4; *see also Doe*, 996 F. Supp. at

355-56.  There is no "sufficiently close nexus" between Defendant and the state, because Defendant chose to commit Plaintiff based on the evaluations and diagnoses of its own employees, without consultation or direction from state officials.  *See Doe*, 254 F. Supp 2d at 343; *Doe*, 996 F. Supp. at 353; *McGugan*, 2012 WL 1514777, at \*5-6.  Because Plaintiff cannot establish state action, her § 1983 claims must be dismissed.

Defendant asks the Court to dismiss this action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure but declines to offer specific grounds for dismissal under each.  To the extent that Defendant's motion to dismiss for lack of subject matter jurisdiction is based upon the deficiency in Plaintiff's § 1983 allegations, Rule 12(b)(1) is the improper vehicle for such an argument.  *See Sisak v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 91 Civ. 1030 (JFK), 1992 WL 42245, at \*2 (S.D.N.Y. Feb. 24, 1992) (quoting *AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 152-53 (2d Cir.1984)) ("[A] section 1983 claim should not be dismissed for want of jurisdiction except when 'it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'").  Even where the Court anticipates that dismissal under Rule 12(b)(6) would be proper, it should not dismiss an action for lack of jurisdiction.  *Spencer v. Casavilla,* 903 F.2d 171 (1990).  Dismissal pursuant to Rule 12(b)(6), however, is necessary.[11]  Plaintiff's inability to allege that Defendant acted under color of state law when it hospitalized and medicated her, or when it applied for a court-ordered assisted outpatient treatment plan, renders her unable to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983.

---

[11] Defendant also argues that Plaintiff's claims regarding her AOT are barred by the doctrine of collateral estoppel.  Doc. 18.  Because dismissal is mandated by Plaintiff's inability to state a cause of action under § 1983, the Court need not address Defendant's argument regarding collateral estoppel.

### B.  Remaining Claims

In addition to her § 1983 claims, Plaintiff's Complaint may be liberally construed as alleging claims for gross negligence, defamation, and intentional infliction of emotional distress. Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction.  Subject matter jurisdiction in the instant action is based on federal question jurisdiction.  28 U.S.C. § 1331.  Having dismissed all of Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate her state law claims.  *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan*, 2012 WL 1514777, at *8 ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."). Therefore, all non-federal claims in the Amended Complaint are hereby dismissed as well.[12]

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's § 1983 claims is GRANTED.  The Court declines to exercise supplemental jurisdiction over her remaining claims pursuant to 28 U.S.C. § 1367(c)(3) and therefore DISMISSES them without prejudice.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 17, to mail a copy of this Opinion and Order to Plaintiff, and to close this case.

---

[12] To the extent that Plaintiff intended to plead any federal causes of action besides the § 1983 claim the Court construes her complaint to allege, the complaint falls short of Rule 8's requirement that a complaint provide a short and plain statement of a plaintiff's claim in order to allow the adverse party to contest the plaintiff's allegations.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

It is SO ORDERED.

Dated: November 18, 2014
New York, New York

Edgardo Ramos, U.S.D.J.